```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF RHODE ISLAND
```

_____
                                   )
RUDRAH DARSHAN, LLC,               )
                                   )
        Plaintiff,                 )
                                   )
     v.                            )   C.A. No. 18-397 WES
                                   )
CALAMAR CONSTRUCTION               )
MANAGEMENT, INC.,                  )
                                   )
        Defendant.                 )
_____)

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

Now before the Court is Plaintiff Rudrah Darshan, LLC's ("RDL") Motion for Partial Summary Judgment ("Motion"), ECF No. 80, on Defendant Calamar Construction Management, Inc.'s ("CCM") two counterclaims – breach of contract and quantum meruit – and for partial summary judgment as to liability on RDL's breach of contract claim. Mem. Law Supp. Pl.'s Mot. Partial Summ. J. ("Pl.'s Mem."), ECF No. 80-1. CCM opposes the Motion, see Def.'s Mem. Law Opp'n Pl.'s Mot. Partial Summ. J. ("Def.'s Mem."), ECF No. 84, but RDL declined to reply. For the reasons below, RDL's Motion is GRANTED.

**I.  BACKGROUND**[1]

The parties signed a construction contract[2] (the "Contract") in July 2016 that centered around CCM building a hotel on property owned by RDL located at 944 Douglas Pike, Smithfield, Rhode Island ("the Project").  Pl.'s Statement Undisputed Facts ("PSUF") ¶¶ 1-2, ECF No. 80-2.  CCM served as the Construction Manager.  Id. ¶ 3.  Under the Contract, CCM was to be paid the Cost of the Work plus a fee with a Guaranteed Maximum Price ("GMP").  Id.  The Contract had a GMP Proposal committing CCM to a price of $8,555,617.  Id. ¶ 4.  It anticipated the Project would last eleven months with an end date of November 1, 2017.  Id.  Mussachio Architects PC, the Project Architect, prepared the plans and specifications.  Id. ¶ 6.

---

[1] CCM failed to comply with the Local Rule requiring the non-movant to a motion for summary judgment to file a statement of disputed facts and a statement of additional undisputed facts.  See L.R. Civ. 56(a)(3)-(4).  Therefore, the Court accepts RDL's Statement of Undisputed Facts, ECF No. 80-2, as true.  Smith v. United Parcel Serv., Inc., C.A. No. 19-192 WES, 2020 WL 5517571, at *3 n.3 (D.R.I. Sept. 14, 2020); see Air Line Pilots Ass'n v. Precision Valley Aviation, Inc., 26 F.3d 220, 224 (1st Cir. 1994) ("Valid local rules are an important vehicle by which courts operate.  Such rules carry the force of law, and they are binding upon the litigants and upon the court itself." (citations and footnote omitted)).

[2] The parties utilized the AIA Document A133-2009 Standard Form Agreement as the operative contract.  Pl.'s Statement Undisputed Facts ("PSUF") ¶ 2; see PX1, AIA Document A133-2009, ECF No. 80-3.  The Contract incorporated the AIA A201-2007 General Conditions.  PSUF ¶ 5; see PX2, AIA Document A201-2007, ECF No. 80-3.

2

Relevant provisions of the Contract include:

- CCM "guarantees that the Contract Sum shall not exceed the [GMP]. . . . To the extent the Cost of the Work exceeds the [GMP], [CCM] shall bear such costs in excess of the [GMP]." PX1, AIA Document A133-2009 § 5.2.1, ECF No. 80-3.

- "Based upon Applications for Payment submitted to the Architect by [CCM] and Certificates for Payment issued by the Architect, [RDL] shall make progress payments on account of the Contract Sum to [CCM] . . . ." Id. § 7.1.1.

- "Unless otherwise provided in the Contract Documents, the [CCM] shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work." PX2, AIA Document A201-2007 ("General Conditions") § 3.4.1, ECF No. 80-3.

- "[RDL] warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall . . . be free and clear of liens." Id. § 9.3.3.

- CCM may terminate the Contract for cause in instances where there is a work stoppage or if RDL "has not made payment on a Certificate for Payment within the time stated in the Contract Documents." Id. § 14.1.1.

- "If one of the reasons described in Section 14.1.1 . . . exists, [CCM] may . . . terminate the Contract and recover from [RDL] payment for Work executed, including reasonable overhead and profit, costs incurred by reason of such termination, and damages." Id. § 14.1.3.

- RDL may terminate the Contract for cause if CCM (1) "repeatedly refuses or fails to supply enough properly skilled workers or proper materials;" (2) "fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor or and the Subcontractors;" (3) "repeatedly disregards" legal authority; or (4) "otherwise is guilty of substantial breach of a provision of the Contract Documents." Id. § 14.2.1.

3

- "When [RDL] terminates the Contract for one of the reasons stated in Section 14.2.1, [CCM] shall not be entitled to receive further payment until the Work is finished." Id. § 14.2.3.

- "[RDL] may, at any time, terminate the Contract for the Owner's convenience and without case." Id. § 14.4.1.

By May 2018, the Project was at least five months behind schedule, even after RDL granted CCM three extensions. PSUF ¶¶ 34, 54. Subcontractors were not working on the Project because CCM was not paying them. Id. ¶ 34. This led to subcontractors recording mechanic's liens against the Project. Id. For example, on May 3, 2018, Gem Mechanical Services, a subcontractor on the Project, recorded a mechanic's lien in the amount of $172,170.00.[3] Id. ¶ 46. At least four liens were recorded against the Project by May 2018. PSUF ¶ 47.

Over the course of the Contract, each month, CCM issued monthly applications for payment ("Applications") as required by section 7.1 of the Contract. PSUF ¶ 14. RDL paid each monthly Application except for the Applications issued on May 11, 2018, and June 5, 2018, which covered work completed in April and May 2018 ("the April and May Applications"). Id. ¶¶ 33, 44-45.

Counsel for RDL issued a Notice of Default letter on June 19, 2018. Id. ¶ 35. The letter asserted that CCM failed to perform

---

[3] CCM contends, however, that it obtained a lien release from Gem Mechanical. Def.'s Mem. 9.

4

its obligations under the Contract. PX7, RDL Ltr. 1 (Jun. 19, 2018), ECF No. 80-3. The letter cited the delays in construction, the four mechanic's liens being recorded against the property, CCM's failure to pay subcontractors, and CCM's failure to produce requested documents and information as examples of obligations on which CCM failed to perform. Id. at 1-2.

CCM responded the next day with a letter ("June 20 Letter") stating that it would "cease operations on June 29, 2018" and hand over obligations to RDL in return for RDL releasing CCM from all liability on the Project and paying CCM's fees up to June 29, 2018.[4] PX8, CCM Ltr. (Jun. 20, 2018), ECF No. 80-3; PSUF ¶ 36. The letter did not specifically identify RDL's failure to pay the April and May Applications as a reason for terminating the Contract or any breach on the part of RDL. PSUF ¶ 37.

The next day, RDL responded with another letter formally terminating the Contract. Id. ¶ 38; PX9, RDL Ltr. (Jun. 21, 2018), ECF No. 80-3. The letter asserted that CCM was in substantial breach of the agreement because of project delays, CCM's failure to pay subcontractors, subcontractor liens being recorded against the property, and insufficient personnel being utilized on the Project. RDL Ltr. 1. The Architect wrote in a

---

[4] During this time, CCM was facing financial trouble, requiring it to shutter its hospitality division. PSUF ¶¶ 30, 34, 51-52.

5

June 25, 2018 letter that RDL was justified in terminating the Contract because the completion date had significantly passed and because there was a lack of manpower on the Project.  PSUF ¶ 40; PX10, Mussachio Ltr. (Jun. 25, 2018), ECF No. 80-3.

A few weeks later, RDL filed a complaint against CCM alleging it breached the Contract.  See generally Compl., ECF No. 1.  CCM filed an answer to the Complaint and asserted two counterclaims for breach of contract and quantum meruit.  See generally Answer, ECF No. 10; Countercl., ECF No. 11.  RDL now moves for summary judgment.

## II. LEGAL STANDARD

To succeed at summary judgment, the moving party bears the burden of showing that there is no genuine issue of material fact and that judgment is appropriate as a matter of law.  Fed. R. Civ. P. 56; see Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 928 (1st Cir. 1983).  A factual dispute is genuine if a reasonable jury, as the fact finder, could award a verdict for either party depending on the credibility of the evidence and witnesses at trial.  Vineberg v. Bissonnette, 529 F. Supp. 2d 300, 301 (D.R.I. 2007).  A fact is material if its determination one way or the other could alter the outcome of the litigation under the applicable law.  Id. at 301-02.  When reviewing a motion for summary judgment, the Court must "view the record in the light most favorable to the nonmoving party and give that party the

benefit of all reasonable inferences in its favor." Id. at 302 (quoting Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006)). If the nonmoving party "fail[s] to come forward with sufficient evidence to generate a trialworthy issue[, that failure] warrants summary judgment to the moving party." Id. (internal citations omitted).

A federal court sitting in diversity is constrained to apply state substantive law. Shay v. Walters, 702 F.3d 76, 79 (1st Cir. 2012) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)); see Barkan v. Dunkin' Donuts, Inc., 627 F.3d 34, 39 n.9 (1st Cir. 2010) (explaining that state law governs breach of contract claims). Neither party disputes that Rhode Island law applies.

## III. DISCUSSION

### A. CCM Counterclaim I: Breach of Contract

CCM alleges in its counterclaim that RDL breached the Contract by wrongfully withholding payment for the April and May Applications. Countercl. ¶¶ 5-12. In its Motion, RDL argues, inter alia, that the Court should grant summary judgment on CCM's counterclaim because CCM breached the Contract, giving RDL a right of nonperformance. Pl.'s Mem. 15-21. CCM contends there are triable issues that preclude summary judgment. Def.'s Mem. 8-12.

   1. Whether CCM Materially Breached, Justifying RDL's Nonperformance

"A material breach occurs when there is a breach of an

essential term of the contract, which defeats the parties' objective in making the contract." Breen v. Green, C.A. No. 18-315JJM, 2019 WL 5855978, at *8 (D.R.I. Sept. 13, 2019) (citation omitted). When a party commits a material breach, the nonbreaching party is justified in its "subsequent nonperformance of its contractual obligations." Machado v. Narragansett Bay Ins. Co., 252 A.3d 1206, 1210 (R.I. 2021) (quoting Women's Dev. Corp. v. City of Central Falls, 764 A.2d 151, 158 (R.I. 2001)). "Generally, whether a party materially breached [its] contractual duties is a question of fact." Parker v. Byrne, 996 A.2d 627, 632 (R.I. 2010). If, however, the issue of whether a material breach occurred "admits of only one reasonable answer, then the court should intervene and resolve the matter as a question of law." Id. (quoting Women's Dev. Corp., 764 A.2d at 158).

RDL argues that it was justified in not paying the April and May Applications because CCM breached the agreement when it sent its June 20 Letter. Pl.'s Mem. 17-19. While it is true that a party's breach allows for the other party's subsequent nonperformance; it does not, however, serve as a mechanism to retroactively cure the first party's previous nonperformance. Ins. Brokers W., Inc. v. Liquid Outcome, LLC, 241 F. Supp. 3d 339, 344 (D.R.I. 2017). Consequently, CCM's June 20 Letter cannot justify RDL's failure to pay the April and May Applications.

Alternatively, RDL argues that CCM "materially breached" the

8

Contract prior to the June 20 Letter. Pl.'s Mem. 15-17. RDL asserts CCM breached the Contract because CCM failed to pay subcontractors, subcontractors recorded mechanic's liens against the property, CCM conducted minimal work, and construction of the hotel was behind schedule. Id.

The Court finds that CCM breached the Contract when it failed to pay subcontractors, which caused them to file mechanic's liens against the property. Under the General Conditions, RDL may terminate the Contract if, among other reasons, the Contractor "fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors." General Conditions § 14.2.1.2. Even more, CCM had a general duty under the Contract to ensure the property was free of liens and that the Project received the necessary materials and services for completion. See id. §§ 3.4.1, 9.3.3. There is no dispute that CCM stopped paying subcontractors. See PSUF ¶¶ 52-53. This resulted in subcontractors not showing up for work – causing delays in construction – and the filing of four mechanic's liens against the property. Id. ¶¶ 47, 52-53.

CCM's breaches were material, giving RDL a right of nonperformance. The failure to pay subcontractors was material to the Contract given that the parties identified the event as a condition to RDL terminating the Contract. Additionally, the Contract requires that the property be free and clear of liens as

9

a condition for being paid, which CCM neglected to do.  See PSUF ¶ 43.  Moreover, the failure to pay subcontractors significantly delayed the performance of the Contract.  See id. ¶¶ 52-54.  Taken together, CCM's nonpayment of subcontractors – and the subsequent liens filed against the property - constituted a material breach which justified RDL's subsequent nonperformance by not paying the April and May Applications.[5]  See 23 Williston on Contracts § 63:3 (4th ed. 2024); see also Parker, 996 A.2d at 632.

RDL has met its burden in demonstrating that there are no issues of material fact concerning its lack of breach when it declined to pay the April and May Applications.  RDL had a right of nonperformance.  Because CCM accepted RDL's Statement of Undisputed Facts as true, it failed to create a genuine dispute.  Accordingly, RDL's Motion with respect to CCM's breach of contract claim is GRANTED.

### B. CCM Counterclaim II: Quasi-Contract/Quantum Merit/Unjust Enrichment

CCM in Count II alleges, "[i]n the event that the Contract is found to be unenforceable or invalid, [CCM] seeks to recover under

---

[5] CCM counters that it obtained a lien release from Gem Mechanical, preventing RDL from arguing that this lien constituted a breach.  Def.'s Mem. 9.  Even still, that fact alone does not create a genuine dispute concerning CCM's alleged breach because CCM's argument does not address the other three or more liens filed against the property.  See PSUF ¶ 47.  It also does not address the fact that CCM failed to pay subcontractors.

the alternate theories of quasi contract, quantum meruit, and unjust enrichment." Countercl. ¶ 14. "[U]njust enrichment occurs 'when a benefit is conferred deliberately but without a contract'" and "the resulting claim of unjust enrichment seeks to recover the defendant's gains." IDC Clambakes, Inc. v. Carney as Tr. of Goat Island Realty Tr., 246 A.3d 927, 933 (R.I. 2021) (quoting S. Cnty. Post & Beam, Inc. v. McMahon, 116 A.3d 204, 210 (R.I. 2015)). "Where there exists an express contract between the parties, equitable doctrines such as unjust enrichment are unavailable." Pickett v. Ditech Fin., LLC, 322 F. Supp. 3d 287, 293 (D.R.I. 2018) (citing Okmyansky v. Herbalife Int'l of Am., Inc., 415 F.3d 154, 162 (1st Cir. 2005)); Café La Fr., Inc. v. Schneider Sec., Inc., 281 F. Supp. 2d 361, 375 (D.R.I. 2003) (holding that, under Rhode Island law, unjust enrichment is available only "in the absence of an enforceable contract").

A claim for quantum meruit is "slightly different" than a claim for unjust enrichment but, as quasi-contract theories, the two claims are "essentially the same." S. Cnty. Post & Beam, 116 A.3d at 211 (citations omitted). "While unjust enrichment focuses on the propriety of a payee or beneficiary retaining funds or a benefit, quantum meruit's primary focus is on the value of services rendered." Id. (quoting Process Eng'r's & Constructors, Inc. v. DiGregorio, Inc., 93 A.3d 1047, 1052 (R.I. 2014)). Like its cousin, a claim for quantum meruit fails at summary judgment if a contract

11

exists between the parties.  Marshall Contractors, Inc. v. Brown Univ., 692 A.2d 665, 669 n.3 (R.I. 1997).

CCM pled quasi-contract as an alternate theory, which is allowed under Rhode Island law.  See Cappalli v. BJ's Wholesale Club, Inc., 904 F. Supp. 2d 184, 197-98 (D.R.I. 2012).  In support of its claim, CCM alleges that RDL "wrongfully withheld payment under the Applications although same were due and owing under the Contract."  Countercl. ¶ 8; see id. ¶¶ 18-19.  CCM's claim, by implication, relies on the terms of the Contract that existed between the Parties.  Therefore, summary judgment must be granted against CCM on its unjust enrichment/quantum meruit claim.  See Hasbro, Inc. v. Mikohn Gaming Corp., 491 F. Supp. 2d 256, 264 (D.R.I. 2007) (granting summary judgment on unjust enrichment counterclaim that rested on the disputed contractual provision).[6]

**C. RDL's Breach of Contract Claim**

RDL also moves for partial summary judgment as to liability on its breach of contract claim.  A breach of contract claim has three elements: "(1) that there was a contract between the parties; (2) that the party sued failed to perform one or more obligations required by the Contract; and (3) that the failure harmed the other party."  Sebren v. Harrison, 552 F. Supp. 3d 249, 263 (D.R.I. 2021)

---

[6] Recognizing this reality, perhaps, CCM did not respond to RDL's argument.

12

(citing Fogarty v. Palumbo, 163 A.3d 526, 541-42 (R.I. 2017)).

The Court agrees that CCM also breached when it sent its June 20 Letter terminating the Contract. In its letter, CCM invoked the "Termination of Convenience" clause. See RDL Ltr.; General Conditions § 14.4. Under the Contract, however, only RDL, as the Owner, has the right to terminate the Contract for convenience. General Conditions § 14.4.1. CCM, as the Contractor, may only terminate for cause if certain conditions are met. See id. § 14.1. CCM did not identify any of the conditions in its June 20 Letter to justify its termination. See CCM Ltr. This lack of cause resulted in CCM breaching the Contract. Consequently, the Court GRANTS RDL's Motion with respect to liability on its breach of contract claim.

**IV. CONCLUSION**

For the reasons above, RDL's Motion for Partial Summary Judgment, ECF No. 80, is GRANTED as to CCM's counterclaims and RDL's breach of contract claim.

IT IS SO ORDERED.

_/s/ Wesmith_

William E. Smith
District Judge
Date: August 8, 2024